**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: JOHN J. SHIGO,
<u>Debtor.</u>

FRANK B. HASKELL, III, Trustee,

No. 95-1959

<u>Plaintiff-Appellant,</u>

v.

JOHN J. SHIGO,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-94-2717-AW, BK-89-997-4)

Argued: June 5, 1996

Decided: July 19, 1996

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
MACKENZIE, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Lorraine Jeanette Rice, Upper Marlboro, Maryland, for
Appellant. Brian Richard Seeber, GINS & SEEBER, P.C., Washing-

ton, D.C., for Appellee. **ON BRIEF:** Frank B. Haskell, III, Upper Marlboro, Maryland, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On April 15, 1989, Dr. John Shigo filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, <u>et seq.</u> Prior to this filing, beginning in 1985, Dr. Shigo suffered a rather unfortunate series of events. In 1985, Shigo separated from his wife and began divorce proceedings. In 1986, both of his parents died unexpectedly from carbon monoxide asphyxiation. As a result of these two traumatic events, Shigo became increasingly irresponsible with respect to his financial affairs and depleted his rather substantial assets by making large gifts to family and friends. In the spring of 1987, Shigo abandoned his Bowie, Maryland medical practice and went on a "sabbatical" to Bermuda and India for a few months.[1] In October, 1987, while visiting his daughter in South Carolina, Shigo was arrested and jailed for failure to pay alimony and child support. Upon release from jail, Shigo returned to his medical practice, only to discover that his associate, Dr. Sood, had changed the locks on all the doors. In January and May of 1988, Shigo attempted suicide and, after each attempt, spent approximately one month in the hospital for treatment related to manic depression. As a result, the Medical Board suspended Shigo's license to practice medicine. Dr. Shigo then filed a Chapter 7 Voluntary Bankruptcy Petition in April, 1989 in the United States Bankruptcy Court in Rockville, Maryland.

_____

[1] When he left his practice, he entrusted his friend, J.P. Rickett, with his corporation's affairs, however, Rickett ultimately began diverting funds from Shigo's practice through his own business.

This action stems from Dr. Shigo's Chapter 7 proceedings, wherein Frank Haskell, III, the elected trustee, filed an Objection to Discharge under 11 U.S.C. § 727, on June 30, 1989.[2] The Objection noted Dr. Shigo's irregular behavior and the lack of adequate explanation in the form of either documentation or testimony for the disappearance of certain categories of assets. The trustee specifically alleged assets in the form of jewelry, automobiles, furniture, Dr. Shigo's inheritance from his parents, and monies withdrawn from his pension plan. Based

---

[2] 11 U.S.C. § 727 -- <u>Discharge</u>

(a) The court shall grant the debtor a discharge, unless--

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

(A) property of the debtor, within one year before the date of the filing of the petition; or

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; or

(4) the debtor knowingly and fraudulently, in or in connection with the case--

(A) made a false oath or account;

. . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; . . . .

3

on these factual allegations, the trustee has repeatedly argued that under § 727 Dr. Shigo is not entitled to a discharge in bankruptcy because he intended to hinder, delay and defraud his creditors by concealing his property. On July 25, 1991, Judge Stephen Derby of the United States Bankruptcy Court for the District of Maryland entered his Memorandum of Decision Overruling Trustee's Objection to Discharge, in which he held that none of the trustee's allegations were sufficient to support denial of discharge under 11 U.S.C. § 727(a)(2)(A) or (a)(4). The trustee appealed and Judge Norman P. Ramsey, by Order entered January 24, 1992, affirmed in part, reversed in part, and remanded the case, concluding that Judge Derby erred in failing to consider the trustee's objection pursuant to § 727 generally, since the record established a prima facie basis for denial of discharge under both § 727(a)(3) and (a)(5). On remand, the Bankruptcy Court again reviewed the trustee's objections, consistent with Judge Ramsey's Order, and again overruled them. By Order entered August 15, 1994, Judge Duncan Keir granted the debtor's discharge, finding that he had met his burden of persuasion under (a)(3) and (a)(5), that his circumstances justified his failure to preserve records, and that his explanation of the loss of his assets was credible. The trustee appealed to the District Court and Judge Alexander Williams, Jr. affirmed the Bankruptcy Court by order entered January 26, 1995.

It is well settled that findings of fact made in a bankruptcy proceeding will not be set aside by a reviewing court unless "clearly erroneous." Due regard must be given to the fact that the bankruptcy court had the opportunity to hear witnesses and to assess their credibility. See Farouki v. Emirates Bank International, Limited, 14 F.3d 244 (4th Cir. 1994). Such a presumption, however, does not apply to legal conclusions, and the court must make an independent determination of ultimate legal conclusions adopted by the bankruptcy judge on the basis of the factual findings, reversing only if they are erroneous. In Re Martin, 698 F.2d 883 (7th Cir. 1983).

The only real issues seriously pressed by the trustee in this appeal concern § 727(a)(3) and (a)(5). The trustee contends that Dr. Shigo failed to preserve records under (a)(3) and failed to satisfactorily

4

explain the loss of his assets, specifically the inheritance and pension plan withdrawals, as required under (a)(5).

While the preservation of records is required under (a)(3), the statute also provides an exception where failure to do so "was justified under all of the circumstances of the case." The Bankruptcy Court is vested with broad discretion in determining whether the records kept by a particular debtor are adequate, given the circumstances of each case. See In re Goff, 495 F.2d 199 (5th Cir. 1974). Judge Keir specifically found that Dr. Shigo fell within the exception provided in (a)(3) holding:

> . . . that given the fact that Dr. Shigo lived a rather itinerant life, to say the least, in 1987 and 1988, that he went through two very serious mental breakdowns in that period of time and was hospitalized for significant periods of time in the relevant period, that it is certainly justified under the circumstances that he might not have a complete record of every personal financial expenditure of any significance during the relevant time.

Judge Keir further found that Dr. Shigo had maintained an adequate record of his financial condition, even though he could not produce them, and that there was no evidence that Dr. Shigo had destroyed records with any intent to hide anything or done other than to cooperate.

Whether Dr. Shigo's explanation of his loss of assets under (a)(5) was adequate and satisfactory is a question of fact, left to the discretion of the bankruptcy court. Farouki, 14 F.3d at 251. Dr. Shigo's uncontradicted testimony was that he used his pension and inheritance to cover tax debts, wedding expenses for his children, college education expenses, and other personal living expenses and the Bankruptcy Court found this testimony to be credible. The huge reduction in his income, from $97,000.00 in 1986 to $4,000.00 in 1988, adequately explains the resulting insufficiency of his assets to meet his liabilities.

The real question before this court is whether the debtor has an obligation under § 727 to reconstruct his entire financial history or just provide the trustee with the records he has, and, if he has none,

5

give an explanation as to why. We subscribe to the latter burden which Dr. Shigo has met in this case. It is clear from the record that Dr. Shigo furnished all records of his financial condition within his possession, including tax returns, to the trustee. While it is true, as the trustee points out, that Dr. Shigo could not provide a transactional record of his personal living expenses, § 727(a)(3) does not require that. That kind of detail is only required of business transactions and no issue concerning business transactions has been raised. Furthermore, Dr. Shigo provided information which the trustee, if he had desired, could have utilized to obtain a more complete set of records from other readily available sources. The trustee chose not to do so.

The purpose of § 727 is to require that a debtor deal fairly with his creditors by fully disclosing his financial condition. Dr. Shigo explained the transfers of all the assets sought by the trustee in such detail that the trustee was able to pursue most of them directly through fraudulent conveyance actions, some of which were successful. This case also presents a unique scenario in that the trustee has been familiar with Dr. Shigo's financial condition long before the bankruptcy petition was filed, through his involvement as counsel for Dr. Shigo's ex-wife--and number one creditor in bankruptcy--in their divorce proceedings.

Regarding any lingering allegations of concealment, both the Bankruptcy Court and the District Court found that the transfers in question had taken place more than one year prior to the filing of the petition, that there was no evidence that Dr. Shigo continued to control the assets in question, and that the trustee failed to prove other acts of intentional concealment within that year. Unless clearly erroneous, these findings of the bankruptcy court must be accepted, particularly when they have been affirmed by the district court. Id.

We agree with the District Court that the legal conclusions of the Bankruptcy Court in this case are supported by the record and that the factual findings are not clearly erroneous. The decision of the District Court is affirmed.

AFFIRMED

6