In re John A. HERMANSON, Debtor.

**First Commercial Financial Group, Inc., Plaintiff,**

**v.**

**John A. Hermanson, Defendant.**

**Bankruptcy No. 98 B 15627.
Adversary No. 99 A 00087.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 14, 2002.

Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Chicago, IL, for Debtor/Defendant.

Jeffrey M. Henderson, Thomas M. Muth, Henderson & Lyman, Chicago, IL, for First Commercial Financial Group, Inc.

Ilene F. Goldstein, Goldstein & Joyce, Northbrook, IL, for the Interim Trustee.

Richard Friedman, Office of the U.S. Trustee, Chicago, IL, for the U.S. Trustee.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

First Commercial Financial Group, Inc., ("First Commercial") objects to the discharge of John A. Hermanson ("Hermanson"), alleging as grounds that he failed to keep adequate records and failed to explain satisfactorily the loss of assets he once owned. These are reasons to deny a discharge under 11 U.S.C. § 727(a)(3)[1] and (a)(5).[2] First Commercial has moved

---

**1.** "The court shall grant the debtor a discharge, unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

**2.** "The court shall grant the debtor a discharge, unless the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

for summary judgment.[3] For the reasons stated below, the Court grants First Commercial's motion and denies the Debtor a discharge under § 727(a)(5).

## I. Background

In December 1992, Hermanson's net worth exceeded $4,000,000, and in August 1993 he was the first or second largest shareholder in thirteen companies. At other times during 1993, Hermanson estimated his personal net worth to be 9.5 million dollars and 8.5 million dollars. From 1993 through 1995, Hermanson's income tax returns show that his adjusted gross incomes for these three years reflect an aggregate loss of $435,675 before his adjusted gross income climbed to a positive $222,359 for the year 1996. On the bankruptcy schedules filed with his chapter 7 case in May 1998, Hermanson reported a negative net worth of approximately 4.3 million dollars. The only ownership interest in business entities he reported on his Schedule B listings was stock in John Hermanson Associates, Inc. and Vantage Capital Management—each being valued at zero dollars.

The two parties to this adversary proceeding have an extensive history with one another. In 1994, First Commercial and Hermanson became embroiled in litigation in the Circuit Court of Cook County concerning First Commercial's alleged misappropriation of First Trading Group, a corporation owned by Hermanson, resulting from its merger into First Commercial. First Commercial and Hermanson were also co-defendants in additional litigation that Burling Bank commenced in 1994. Then, in 1995, First Commercial and Hermanson both appeared before the Commodity Futures Trading Commission as well as the National Futures Association as a result of alleged violations of federal law. The two parties have been engaged in discovery since long before Hermanson filed his 1998 bankruptcy petition.

First Commercial contends that Hermanson is not entitled to a discharge for two reasons. First, he has failed to keep records of transactions involving millions of dollars—transactions such as investing hundreds of thousands of dollars in over a dozen business entities, loaning money to individuals and businesses, and receiving loans from individuals and banks; furthermore, Hermanson has not been able to set forth specific dates, transfers, and losses concerning these transactions, supported by bank-account statements, general ledgers, or other documentation. Second, he has failed to satisfactorily account for a reduction in his net assets from $8.5 to $9.5 million in 1993 to $723,935 in 1998 ($700,000 of which is an unliquidated, potentially uncollectible claim against Vantage Capital Management, Inc.).

Hermanson defends by contending that his failure to keep adequate records is justified under all of the circumstances, that other people and entities have documents that could be used to account for his asset depletion, that three specific events satisfactorily explain his financial demise, and that genuine disputes of material facts prevent the entry of summary judgment.

## II. Jurisdiction

This Court has core jurisdiction to render a final judgment in this proceeding because it arises under § 727(a) of the Bankruptcy Code. *See* 28 U.S.C. § 157(b)(2)(J).

---

**3.** Federal Rule of Bankruptcy Procedure 7056 ("Rule 56") makes Federal Rule of Civil Procedure 56 applicable to adversary proceedings. To the extent First Commercial is not entitled to the complete relief sought, it seeks whatever partial summary judgment the Court deems appropriate under Rule 56(d).

### III. Standards for Summary Judgment

In order for First Commercial to prevail on its motion for summary judgment, it must demonstrate both that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Since First Commercial bears the burden of proof on the § 727(a) cause of action, it cannot rest on the pleadings but has an initial duty to affirmatively reveal an absence of a genuine issue of material fact on every element essential to its case. *See Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 955 (Bankr.N.D.Ill.1995). If First Commercial established its *prima facie* case under § 727(a) at trial, the burden of producing evidence to support a defense[4] would shift to Hermanson (as detailed in Part IV.B below). First Commercial, therefore, must also affirmatively demonstrate that although Hermanson had a sufficient opportunity for discovery, he has insufficient evidence as a matter of law to support any essential portion of his affirmative defense. *See Gilbert v. New England Mutual Life Insurance Co. (In re Worl)*, 111 B.R. 665, 668 (Bankr.S.D.Ohio 1990).

If First Commercial accomplishes these two tasks, Hermanson (as the nonmoving party) is "required to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial," *Gilbert*, 111 B.R. at 668; *see* Fed. R. Civ. Pro. 56(e), or if there is still no genuine issue of material fact requiring a trial, he is required to demonstrate that First Commercial is not entitled to judgment as a matter of law. The Court will view inferences drawn from the evidence presented in the light most favorable to the nonmoving party, Hermanson, *see In re Bryson*, 187 B.R. at 955, and it will consider a factual dispute to be material only if it is determinative of the outcome under the applicable bankruptcy law, *see id.* Also, any factual disputes raised by the nonmovant must result from more than a scintilla of evidence in favor of the nonmovant; that is, in order to demonstrate a material factual dispute, Hermanson must adduce a quantum of evidence which is legally sufficient to enable a jury to reasonably resolve the factual dispute in his favor. *See Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 883 (6th Cir. BAP 1999); *Gilbert*, 111 B.R. at 668.

### IV. Discussion and Analysis

#### A. First Commercial's Standing

■■■ As a preliminary defense, Hermanson argues that First Commercial does not have standing to object to his discharge under 11 U.S.C. § 727(c) because First Commercial has not yet established that it has a legitimate claim against Hermanson.[5] Hermanson contends that because he listed his debt to First Commercial as disputed, and because he himself lists a claim of unknown value against First Commercial, he may ultimately not owe anything to First Commercial, which would then not be a creditor with standing to object.

---

4. For § 727(a)(3), Hermanson would need to show at trial that his failure to keep or preserve records was justified under the totality of circumstances, and for § 727(a)(5), he would need to show that he can satisfactorily explain any loss of assets.

5. Hermanson offers evidence tending to establish First Commercial's dissolution in Defendant's Exhibit A, but he presents no argument based on this evidence in his memorandum of law, and the Court will not maintain one for him.

This argument has no merit. Section 727(c)(1) says that "a creditor ... may object to the granting of a discharge under subsection (a)." Section 101(10) defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief." In turn, § 101(5) defines a claim as a "right to payment, whether or not such right is reduced to judgment, ... contingent, ... unmatured, [or] disputed." Therefore, any creditor who *might* be affected by a discharge may object to one, and because a claimant with a disputed claim could prevail, he may challenge the discharge until his claim has been denied. *See Stanley v. Vahlsing (In re Vahlsing)*, 829 F.2d 565, 567–68 (5th Cir.1987). In this case, First Commercial's claim has not been adjudicated. Therefore, First Commercial has standing to object to Hermanson's discharge.

### B. Overview of Substantive Law Governing § 727(a)(5) Causes of Action

Section 727(a) authorizes the denial of a bankruptcy discharge to a debtor who did not adequately explain a disappearance of assets prior to bankruptcy. *See First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir.1983). On the one hand, the court must construe objections to discharge strictly against the creditor and liberally in favor of the debtor to promote the U.S. Bankruptcy Code's "fresh start" policy. *See In the Matter of Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996); *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 316 (Bankr. S.D.N.Y.1994). On the other hand, it must recognize that a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of a debtor with substantially accurate and complete records of his financial affairs so that creditors can be assured that only honest debtors receive discharges. *See In the Matter of Juzwiak*,

89 F.3d at 427; *Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 995 (Bankr.N.D.Ill.1992).

The intent behind § 727(a) is to deter abuse of the bankruptcy system. *See Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 317 (Bankr.S.D.N.Y.1994). Furthermore, it relieves creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor. *See In the Matter of Juzwiak*, 89 F.3d 424, 428 (7th Cir.1996). The Court is not concerned with the wisdom of the debtor's disposition of assets but is concerned with the truth, detail, and completeness of the debtor's explanation of loss. *See In the Matter of D'Agnese*, 86 F.3d 732, 735 (7th Cir.1996).

First Commercial has the burden of proof on its complaint objecting to discharge under § 727(a). Fed. R. Bankr.P. 4005. In actions brought under § 727(a)(5), the plaintiff has a preliminary burden of adducing evidence that demonstrates that the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors. *See Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 955 (Bankr.N.D.Ill. 1995). If the objector makes this showing, the debtor then has the burden of establishing a "satisfactory" explanation for the asset reduction. *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984); *First Texas Savings Ass'n v. Reed (In the Matter of Reed)*, 700 F.2d 986, 992 (5th Cir.1983); *In re Bryson*, 187 B.R. at 955.

Though the explanation does not necessarily need to be comprehensive, it must meet two criteria in order to be deemed "satisfactory." *See In re Bryson*, 187 B.R. at 956. First, it must be sup-

ported by at least some documentation. *See In the Matter of D'Agnese,* 86 F.3d 732, 733–35 (7th Cir.1996); *Hawley v. Cement Industries, Inc. (In re Hawley),* 51 F.3d 246, 249 (11th Cir.1995); *In re Bryson,* 187 B.R. at 956. Second, this documentation must be sufficient to "eliminate the need for the Court to speculate as to what happened to all the assets." *In re Bryson,* 187 B.R. at 956; *see In re Martin,* 698 F.2d at 888. In other words, it "must consist of more than [a] vague, indefinite, and uncorroborated hodgepodge of financial transactions," *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir.1966),[6] and it must convince the Court that the debtor has not concealed assets, *see Nof v. Gannon (In re Gannon),* 173 B.R. 313, 317 (Bankr.S.D.N.Y.1994). Even though a satisfactory explanation must be convincing about this lack of concealment, the focus of the inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation but is also on the objective adequacy of such explanation. *See D'Agnese,* 86 F.3d at 734–35. Furthermore, a debtor's failure to satisfactorily justify a substantial loss of assets need not be the product of fraudulent intent. *See Nof v. Gannon (In re Gannon),* 173 B.R. 313, 317 (Bankr.S.D.N.Y.1994); *cf. In the Matter of Juzwiak,* 89 F.3d 424, 430 (7th Cir.1996) (same principle under § 727(a)(3)). An objecting plaintiff must prevail on two issues, however: the disappearance of substantial assets and a lack of a satisfactory explanation for this disappearance.

### C. First Commercial's Prima Facie Case Under § 727(a)(5): Disappearance of Substantial Prepetition Assets

 First Commercial has established that in December 1992, Hermanson had a

net worth of approximately $4,067,000, (Pl.'s Ex. 2 ¶ 121; Ex. 3 at 148–51 & Attach. 11.), and, in 1993, a net worth of at least $4,000,000. (Pl.'s Ex. 5 at 100.) There is no genuine dispute that Hermanson owned substantial assets within six years before filing for bankruptcy. Moreover, in the same time frame, Hermanson received proceeds from at least six different loans in the total amount of $1,940,160. (Pl.'s Ex. 3 at 72–75, 77–78; Ex. 7 Sched. F; Ex. 8 at 19, 47–50.)

In his amended Schedule B, filed on July 31, 1998, Hermanson claimed a negative net worth of approximately 4.3 million dollars, and aside from two unliquidated and potentially uncollectible claims against other entities (including First Commercial), his reported assets consisted only of personal property totaling $23,935 in value. (Pl.'s Ex. 7.)

This disappearance of substantial and identifiable assets establishes First Commercial's prima facie case. *Cf. Soft Sheen Products, Inc. v. Johnson (In re Johnson),* 98 B.R. 359, 366 (Bankr.N.D.Ill.1988) (prima facie case established under § 727(a)(5) where net worth in excess of $200,000 dwindled to negative net worth of more than one million dollars over period of three years).

### D. Hermanson's Response to First Commercial's Summary Judgment Motion

#### 1. Hermanson's Rebuttal: The Disappearance Is Satisfactorily Explained as a Factual Matter

To explain this substantial reduction in assets over six years, Hermanson offered interrogatory answers as evidence of three events: 1) First Commercial's alleged 1994 misappropriation of First Trading Group;

---

**6.** The similarities between 11 U.S.C. § 727(a)(5) and § 14(c)(7) of the Bankruptcy Act are substantial enough so that cases de-

cided under the Act continue to be pertinent under the Code. *See In re Martin,* 698 F.2d 883, 886 (7th Cir.1983).

2) the complete loss in value of his Checkers Double Drive Thru stock (once worth between $3,000,000 and $7,000,000) resulting from this corporation's bankruptcy petition in 1995 or 1996; and 3) the complete loss in value of his shares in Vantage Capital Management, Inc. between 1995 and 1997. (Ans. of Herm. to 1st Set of Interrogs. at 3.) Hermanson submits that he "has acted in good faith in explaining the loss of his assets by citing the three events that contributed to his financial demise" and that they are thus a sufficient explanation. (Def.'s Memo. of Law in Support of Resp. at 4.)

█ The explanatory evidence offered by Hermanson takes the form of an interrogatory answer executed and signed by Hermanson's attorney. (Pl.'s Ex. 9.) It clearly consists of statements which in turn are based on the statements of another person with personal knowledge, and as such it is hearsay excluded from admission into evidence under Federal Rule of Evidence 802. Hence, it is not the type of evidence a court may consider in opposition to a motion for summary judgment. *See Garside v. Osco Drug*, 895 F.2d 46, 49–50 (1st Cir.1990) (plaintiff's interrogatory answer describing how doctor would testify was inadmissible hearsay); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir.1987).

█ Even if the Court considered this evidence, however, it would not be able to conclude that it provided a satisfactory explanation of the proven asset depletion.

First Commercial has demonstrated the disappearance of numerous specific assets not explained at all by the above three explanations. Hermanson was the first or second largest shareholder in eleven different corporations,[7] and in 1997 he was the first or second largest shareholder in a twelfth company.[8] During 1993, Hermanson had at least some type of ownership interest in other business entities, as well.[9] In addition, Hermanson once owned valuable personal property including jewelry worth between $3000 and $4000 and a wardrobe worth $10,000 in May 1996.

Furthermore, First Commercial's evidence is that Hermanson owned the entities in 1993 directly; they were not owned by Vantage Capital Management, and Vantage Capital Management's value loss, therefore, does not account for their disappearance (nor the disappearance of the valuable personal property).

Additionally, First Commercial notes that Hermanson can point to nothing in the record that connects his misfortunes with Checkers Double Drive–Thru and First Trading Group with his loss of interests in these fifteen entities and valuable personal property prior to bankruptcy. In fact, Hermanson dissolved First Trading Group way back in October 31, 1990, yet had a $4,000.000 net worth three years later. (Pl.'s Ex. 3 at 167–69.)

Hermanson has shown some explanation for the loss of his interests in six other

---

7. Stellar Corporation; Play It Again Sports, Europe; Once Upon a Child, Europe; Old Man River Casino; World Wide Technology; Swedes Corporation; Amber Limousine Service; Kidz Casting; Kingsland Commerce; ERSI, Inc. (an investment of at least $200,000); and Graphics Marketing Corporation (at least 1.5 million shares). (Pl.'s Ex. 3 at 136; Ex. 2 ¶¶ 6, 10, 12, 14, 27, 29, 33, 35, 39, 41, 57, 124.)

8. Renaissance Building Corporation. (Pl.'s Ex. 2 ¶ 60.)

9. Vantage Trading Partners, Catalyst, and Renaissance Partnership. (Pl.'s Ex. 2 ¶¶ 49, 51, & 53.)

entities,[10] but First Commercial has succeeded in showing the absence of a satisfactory account for the disappearance of other assets, including the equity interests in fifteen business entities and $13,000 to $14,000 in valuable personal property. Hermanson has done nothing to support his bare assertion that the three events he has consistently cited fully account for his financial demise. He has produced no documentation specifically demonstrating how the three events relate to the specified lost assets.

*Baum v. Millikin, Inc., (In the Matter of Baum),* 359 F.2d 811 (7th Cir.1966), is particularly on point. In that case, the debtor argued that a value decline in the real-estate market satisfactorily explained his loss of approximately $350,000 in assets over twenty-one months, much like Hermanson argues that his loss of assets stems from the loss in value of Checkers Double Drive–Thru and Vantage Capital Management, Inc. *See id.* at 813. But the *Baum* bankruptcy court found examples of several individual transactions that were unrelated to property devaluation or to initial overvaluation, and the debtor was then unable to account for the proceeds from the sale or other disposition of his shares in closely held corporations. *See id.*

Although First Commercial has not offered past values for most of Hermanson's shares in the fifteen entities, that lack is not significant. The record indicates that Hermanson was undoubtedly the first or second largest shareholder in twelve of the fifteen entities, that his investment in one of them totaled at least $200,000, and that he held at least 1.5 million shares in another one. Whatever their values, Hermanson has simply failed to explain what happened to his equity interests or to his valuable personal property. *Cf. In re Reed,* 700 F.2d 986, 993 (5th Cir.1983) (disappearance of only $19,586.83); *In re Martin,* 698 F.2d 883 (7th Cir.1983) (of $15,000); *In re White,* 63 B.R. 742 (Bankr. N.D.Ill.1986) (of $10,000); *D'Agnese,* 86 F.3d at 733–34 (objection under § 727(a)(5) sustained when debtor could not satisfactorily explain what happened to $300,000 worth of personal property including diamonds, crystal, and sterling silver).

Additionally, of the $1,940,160 in loan proceeds listed in Part IV.C, the record contains verbal explanations for what became of two of the six loans. Hermanson used a loan for $480,000 to pay expenses incurred while moving from company to company, (Pl.'s Ex. 3 at 74), and he invested the proceeds of a $100,000 loan from Burling Bank in the now-bankrupt Chicago (Checkers) Double Drive Thru, (Pl.'s Ex. 8 at 17). Hermanson, however, has not accounted for the proceeds of the other four loans totaling $1,360,160, apart from his general reliance on the three circumstances listed in his attorney's interrogatory answers. In *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616 (11th Cir.1984), the bankruptcy court denied the debtor's discharge pursuant to § 727(a)(5) when the debtor could not present documentation to confirm his dissipation of $130,000 in loan proceeds prior to bankruptcy. *See id.* at 619–20.

### 2. *Hermanson's Rebuttal: There Are Genuine Issues of Material Fact*

Hermanson further counters by trying to create a genuine issue of material fact concerning the history of the lost assets. He claims that other individuals—including First Commercial, relatives, former

---

**10.** Magic Travel, Greystone Ventures I—III, Kids Play World, and Public Service Corporation of Colorado. (Pl.'s Ex. 2 ¶¶ 65, 106, 110; Ex. 3 at 89–97; Ex. 16 at 1997 Att. Seq. No. 12.)

accountants, and creditors—might have documents that could be used to create an accurate record explaining the disposition of assets. To support this argument, Hermanson submits his own exhibits—including his attorney's affidavit and two different complaints involving both First Commercial and Hermanson—to demonstrate that First Commercial's prior attorneys at Foley & Lardner are in possession of approximately 42 boxes of financial documents that may provide the necessary information. The affidavit also states that Hermanson's attorney requested, received, and reviewed copies of some of these documents totaling eight boxes and that this limited (though substantial) effort was an attempt to keep Hermanson's costs at a manageable level. The Internal Revenue Service, the National Futures Association, and the Commodity Futures Trading Commission also may have relevant documents. In response to many individual items of evidence that First Commercial offers as facts not subject to material dispute in support of its summary judgment motion, Hermanson additionally responds by 1) saying that he now disputes the accuracy of the factual matters that First Commercial sets forth or 2) asserting that First Commercial's evidence does not conclusively establish the given factual matter.

 It is not enough to overcome a § 727(a)(5) objection to offer a general oral explanation for the disappearance of substantial assets without documentary corroboration. *See D'Agnese,* 86 F.3d at 733–35; *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619–20 (11th Cir.1984); *In re Bryson,* 187 B.R. at 956; *Soft Sheen Products, Inc.,* 98 B.R. at 366; *cf. Turoczy*

*Bonding Co. v. Strbac (In re Strbac),* 235 B.R. 880, 884–85 (6th Cir. BAP 1999) (same principle under § 727(a)(3)); *In the Matter of Juzwiak,* 89 F.3d 424, 429 (7th Cir.1996) (same principle under § 727(a)(3)). It is certainly not adequate in response to a motion for summary judgment to show only that such documents may yet be offered at trial.

 Under Rule 56(e) as interpreted by the Seventh Circuit, Hermanson cannot create a genuine issue of material fact by submitting affidavits with conclusions contradicting prior sworn testimony or documentary evidence. *See Kalis v. Colgate–Palmolive Co.,* 231 F.3d 1049, 1055 (7th Cir.2000); *Szymanski v. Rite–Way Lawn Maintenance Co.,* 231 F.3d 360, 364 (7th Cir.2000). "Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 532 (7th Cir.1999). Proper affidavits must be based upon the personal knowledge of definite facts, not upon "information and belief," conclusory legal statements, or subjective beliefs. *See Lee v. Wal–Mart Stores,* 1994 WL 899240, at *6–*8 (N.D.Ind. April 12, 1994). As the nonmovant, Hermanson must point to specific portions of the movant's existing summary judgment record (other than his own pleadings), of newly submitted and admissible documentary evidence, or of newly submitted, uncontradictory affidavits[11] that reveal a genuine issue of material fact either in First Commercial's prima facie case under § 727(a)(5) or in its own affirmative defense to this prima facie case. Hermanson has not done this. His response, says only that he disputes the accuracy of evidence or that the record

---

11. A nonmoving party may, however, effectively submit self-serving, contradictory affidavits after his opponent moves for summary judgment *if his opponent's version of material* facts is also supported solely by selfserving assertions. *See Szymanski v. Rite–Way Lawn Maintenance Co.,* 231 F.3d 360, 365 (7th Cir. 2000).

does not conclusively establish a fact set forth in First Commercial's statement of facts not in genuine dispute. Contrary to what Hermanson argues, First Commercial's evidence is sufficient to support entry of a summary judgment unless he either adduces his own admissible evidence contradicting First Commercial on specific matters [12] or he points to *material* contradictions in First Commercial's own exhibits. *See* Local Bankruptcy Rule 402(N)(1) & (3) (movant's statement of undisputed material facts deemed admitted unless controverted by references to specific materials). Hermanson has done neither.

■ Furthermore, Hermanson's attempt to create a genuine issue of material fact essentially attempts to place the burden of constructing a satisfactory explanation for asset disappearance on First Commercial. In trying to create a material factual dispute by using affidavits and interrogatory answers that indicate that explanatory documents are in the possession of attorneys for First Commercial, former accountants, the Internal Revenue Service, and other entities, Hermanson fails to acknowledge his shifted burden to produce evidence to support a satisfactory explanation under 11 U.S.C. § 727(a)(5). *See Chusid v. First Union National Bank,* 1998 WL 42292, at *5 (E.D.Pa. Jan.21, 1998); *cf. In the Matter of Juzwiak,* '89 F.3d 424, 429 (7th Cir.1996) (same principle under § 727(a)(3)). That is, he himself—not First Commercial—must point to and correlate specific portions of specific documents that explain the substantial re-duction in the assets for which Hermanson has heretofore provided no account; he must do significantly more than produce evidence that other entities have unspecified documents that could conceivably be used to construct an explanation at some later time.

■ Even if the documents are currently in the possession of others, the burden of sifting through them, organizing them, and constructing this explanation remains at all times on Hermanson, once First Commercial has laid out a prima facie case. In complex cases involving substantial assets and funds, even producing for creditors a ream of potentially relevant documents—including evidence such as checking account ledgers,[13] canceled checks,[14] deposit slips, bank statements, and income tax returns—will not by itself create a satisfactory explanation for the disappearance of assets, unless an accountant transforms them into a complete and credible explanation, obtains missing information, explains discrepancies, and does whatever else is necessary to make the explanation intelligible. *Cf. In the Matter of Juzwiak,* 89 F.3d 424, 426, 429 (7th Cir.1996) ("[T]he bankruptcy court erred in holding § 727(a)(3) was satisfied because [the creditor] *could have* organized [the debtor's] records, hired an accountant, and interviewed [the debtor] or obtained missing information from [the debtor's] customers.") (emphasis added) *with Bay State Milling Co. v. Martin (In re Martin),* 141 B.R. 986, 996–97 (Bankr.N.D.Ill.

---

12. To prevent circumvention of the admission procedures in Federal Rule of Civil Procedure 36(a) intended to facilitate the narrowing of issues for trial, Rule 36(b) mandates that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Thus, in response to a summary judgment motion, a party cannot effectively submit affidavits, depositions, or other evi-dence to contradict a fact admitted pursuant to Rule 36(a). *See United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir.1987).

13. *See, e.g.,* Resp. of Def. to Stmnt. of Facts Not Subj. to Disp. ¶ 137.

14. *See, e.g.,* Resp. of Def. to Stmnt. of Facts Not Subj. to Disp. ¶ 150.

1992) ("[W]ith aid of his accountant ... who testified persuasively, [the debtor] explained the fluctuations in Country Maid records as to his loans.... The accountant adequately explained and tied down the otherwise inexplicable fluctuations in Country Maid balance sheet entries.... From the accountant's evidence, it is apparent that records were kept from which the amounts of loans and repayments thereto may be ascertained."). Therefore, evidence that explanatory documents exist somewhere is not sufficient to raise a genuine dispute on the issue of the adequacy of Hermanson's explanation.

Hermanson is not claiming that he has been given insufficient access to necessary files or insufficient time to review them. In fact, Hermanson's own exhibits reveal that his attorney had access to the 42 boxes of potentially relevant documents at the offices of First Commercial's attorneys in prior litigation. The time to take discovery in this proceeding was from June 20, 1999, until March 2, 2001. Hermanson did not make any effort under either Rule 37 or Rule 56(f) to show an insufficient access to documentary evidence necessary to rebut a prima facie case under § 727(a)(5) and defeat First Commercial's motion for summary judgment.

Finally, Hermanson points to several genuine factual disputes in the record of exhibits, but none of them are material to this adversary proceeding. Hermanson reveals a factual dispute over whether his accountant Victor DiMaggio actually returned the source documents used to prepare his income taxes from 1990 through 1996; however, as discussed above, the controlling issues would need to be access and availability rather than mere possession for this to be relevant. Furthermore, even if the Court adopts Hermanson's version of the facts and finds that DiMaggio does possess these source documents,

Hermanson still has not offered a satisfactory explanation of asset dissipation. Regarding a second genuine factual dispute, Hermanson has offered evidence that DiMaggio prepared his income tax returns for 1997 and 1998, not only for the time period from 1990–1996 as stated in DiMaggio's affidavit. Again, this information in no way tends to explain a substantial loss of assets or establish a lack of access to information needed to do so. Hermanson also points to inconsistencies in First Commercial's evidence concerning his gross income in both 1996 and 1998; to valid disputes over the ownership or loss of personal assets such as a watercraft, a camcorder, and recreational equipment; and to a valid dispute over his investment in Maxlight. But, First Commercial did not rely on this information to establish its underlying prima facie case described above or to provide examples of specific unexplained losses. Other true disputes— such as the documentation of Hermanson's debt to Ron Firman—relate only to the § 727(a)(3) cause of action.

First Commercial has met its burden of affirmatively showing that there is no genuine issue of material fact concerning whether Hermanson has satisfactorily explained his asset reduction, and Hermanson has not proffered such an explanation.

### 3. Hermanson's Rebuttal: First Commercial's Period of Inquiry Is Unreasonably Long

 Hermanson argues that, First Commercial's focus on his ownership interests in 1992 and 1993 is unreasonable. He invites the Court to focus instead on the two years surrounding his May 1998 bankruptcy petition when he was unemployed and earning totals of $23,220 (1997) and $6066 (1998) in income.

The Court disagrees. As detailed above, the dissipation of assets during the six years prior to his petition was consider-

able, and a focus on his income only when he was no longer earning substantial sums of money during the most recent period before bankruptcy would produce a distorted picture. A look at bankruptcy case law reveals that as factual matter, a focus on the two years prior to the debtor's petition filing is common, *see, e.g., In re Martin,* 698 F.2d at 886; *Baum,* 359 F.2d at 813, but inquiries extending beyond two years certainly occur when warranted, *see, e.g., D'Agnese,* 86 F.3d at 734 (9 years prepetition); *In re Bryson,* 187 B.R. at 956 (4 years prepetition); *Bay State Milling Co. v. Martin (In re Martin),* 141 B.R. 986, 988, 999 (Bankr.N.D.Ill.1992) (4 years prepetition). *Cf. Hawley v. Cement Industries, Inc. (In re Hawley),* 51 F.3d 246, 248 n. 1 (11th Cir.1995) (rejecting contention that § 727(a)(5) bars discharge only if loss of assets occurs within one year before petition filing).

4. *Hermanson's Rebuttal: A Debtor Need Only Make a Good–Faith Effort to Turn over Whatever Information He Himself Has*

Hermanson submits that he has provided a good-faith explanation of his asset depletion, has consistently relied upon the same three events to explain the losses, has turned over all of the documentation he himself had after filing for bankruptcy, and has explained the possible whereabouts of the documents that he did not possess. He contends that this effort is sufficient as a matter of law to obtain a discharge and that he ought not be held responsible for the business records of the fifteen entities in which he held interests at one time. He also correctly points out that objections to discharge must be construed liberally in favor of the debtor and strictly against objecting creditors to further the Bankruptcy Code's "fresh start" policy.

■ An explanation is not satisfactory, however, merely because it has been offered in good faith and relates to underlying events which were nonfraudulent in nature. The explanation must also be objectively adequate.

Hermanson relies on the unpublished decision of the Fourth Circuit, *Haskell v. Shigo (In re Shigo),* 1996 WL 405223 (4th Cir. July 19, 1996), for the proposition that "all Hermanson need do to obtain his discharge is to provide the documentation he has and, to the extent any is unavailable[,] give an explanation as to why the documents are not available." (Def.'s Memo. of Law in Support of Response to Pl.'s Motion for Summ. Judg. at 6.) In *Shigo,* the bankruptcy court had overruled the U.S. trustee's objection to the debtor's discharge under § 727(a)(3) and (5), and both the U.S. District Court for the District of Maryland and the Fourth Circuit affirmed the decision.

Hermanson's reliance is inapt. The opinion distinguishes between business and personal assets. Finding that the debtor's challenged losses concerned jewelry, automobiles, furniture, inheritance money, and funds withdrawn from a pension plan, the Fourth Circuit lowered the level of detail required for a satisfactory explanation. *Shigo,* 1996 WL 405223, at *2. Hermanson's investments in the fifteen entities (listed in Part IV.D.1) are clearly business transactions and would receive different treatment under the *Shigo* opinion itself. Moreover, in *Shigo* there were truly extraordinary circumstances not present in this case. Prior to his bankruptcy petition, the debtor had been divorced, had lost both his parents unexpectedly, had been locked out of his medical practice during an extended vacation, had been twice hospitalized for manic depression after two suicide attempts, and had his medical license suspended. *See id.* at

*1. In addition, in *Shigo* the debtor's oral testimony regarding his expenditures was sufficiently detailed, complete, and specific to explain most of his asset dissipation and to enable the trustee to pursue most asset transfers in fraudulent conveyance actions. *See id.* at *2–*3. In contrast to that case, the Debtor's proffered explanations simply are not factually complete or detailed enough to account for substantial assets Hermanson once owned.

Finally, Hermanson argues that he is not required to produce the records of the entities in which he owned equity interests. He is correct. But First Commercial, however, does not argue that Hermanson must produce the financial records of the fifteen entities themselves; rather, it complains that there is no satisfactory information about the history of Hermanson's individual ownership interests in them. The court agrees.

### V. Conclusion

For the foregoing reasons, the Court grants First Commercial's motion for summary judgment on Count II of its complaint objecting to Hermanson's discharge pursuant to § 727(a)(5). Because Hermanson's bankruptcy discharge has been denied under § 727(a)(5), the Court need not address First Commercial's objection pursuant to § 727(a)(3).[15]

15. The Court notes, however, that the second portion of a § 727(a)(5) cause of action—requiring a debtor to submit evidence which satisfactorily explains a substantial depletion of assets—is in many ways inextricably linked to a § 727(a)(3) cause of action—requiring a debtor to maintain and retain adequate records of his financial history. Both impose a duty on a debtor to submit reasonably complete and credible documentation accounting for his financial status as a precondition to obtaining the privilege of receiving a discharge. It would truly be a rare case in which a substantial disappearance of assets could be adequately explained without sufficient record keeping.