# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 15-11001

—————

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2017

Lyle W. Cayce
Clerk

In The Matter of: STEPHEN CHU

     Debtor

_____

STEPHEN CHU,

     Appellant

v.

STATE OF TEXAS,

     Appellee

—————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CV-3584

—————————

Before JOLLY, HIGGINBOTHAM, and GRAVES, Circuit Judges.

PER CURIAM:*

     Stephen Chu is an orthodontist who filed a petition under Chapter 7 of the Bankruptcy Code after his dental practice took a downturn. He appeals from the district court's judgment affirming the bankruptcy court's denial of

---

     * Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 15-11001

discharge under 11 U.S.C. § 727(a)(4)–(5) based on its conclusion that he "knowingly and fraudulently, in or in connection with the case—made a false oath or account" and that he "failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(4)(A) and (a)(5). The determination was based in large part on Chu's failure to disclose several large monetary transactions in his Schedules and Statement of Financial Affairs ("SOFA"). We find no reversible error and AFFIRM.

## I.

Chu's orthodontics practice primarily treated patients qualifying for Medicaid. Once thriving, his practice came to an abrupt halt in 2011 when the Texas Health and Human Services Commission ("HHSC") notified him of a payment hold because he allegedly engaged in Medicaid fraud from 2007 to 2011. The HHSC alleged, in particular, that Chu received over $11 million in Medicaid overpayments. Chu's practice went downhill for over a year following the Medicaid payment hold. In December 2012, Chu filed for Chapter 7 bankruptcy. He filed his Schedules and SOFA at the time of his original bankruptcy filing; over a year later, Chu filed an amended SOFA but did not amend his Schedules.

At around the same time as Chu's bankruptcy filing, the State of Texas commenced a *qui tam* action under seal against Chu, his professional association, and other entities. The *qui tam* action, pursued in state court, was partially unsealed in February 2013 to alert Chu and the bankruptcy court to its existence. After Bankruptcy Rule 2004 investigations during the summer of 2013, the State filed an adversary proceeding to contest Chu's request for discharge in the bankruptcy court. *See* FED. R. BANKR. P. 2004. The State claimed that Chu had violated Section 727(a)(2)–(5) of the Bankruptcy Code.

2

No. 15-11001

At the close of discovery, the State moved for summary judgment on all counts. The bankruptcy court denied summary judgment, and a trial was conducted on the merits. Chu amended his Schedules and SOFA shortly prior to trial. At the end of the presentations of the evidence and testimony, the matter was taken under advisement. The bankruptcy court found "numerous and significant omissions" in Chu's Schedules[1] and concluded that he either acted with "fraudulent intent" or "reckless indifference for the truth." *In re Chu*, No. 12-37962-HDH-7, at *5 (Bankr. N.D. Tex. Aug. 26, 2014).

When the trial drew to a close, the bankruptcy court declined to find that Chu violated 11 U.S.C. § 727(a)(2) and (3), but nonetheless denied his discharge pursuant to 11 U.S.C. § 727(a)(4) and (5). Chu appealed to the district court. His appeal was untimely filed, and he moved in the bankruptcy court for an extension of time for which to file an appeal. The court granted Chu's motion without a hearing. The district court affirmed the judgment of

---

[1] Specifically, the bankruptcy court found that:

1. Chu admitted to leaving his brother, Wilson Chu, off his schedules as a creditor, and failed to disclose prepetition loans made by Wilson Chu to him.
2. Chu failed to disclose on his SOFA over $317,144 earned in 2010 as income.
3. Chu did not disclose that U.S. Bank foreclosed on a piece of valuable machinery used in his dental practice within a year of the bankruptcy filing.
4. Chu did not disclose that he cashed in life insurance policies worth approximately $190,000 in either 2011 or 2012.
5. Chu did not disclose the true value of whole life insurance policies worth between approximately $51,000 and $62,000, rather claiming them to have no cash value.
6. Chu did not disclose that he sold a $20,000 Cartier watch to a third-party buyer.
7. Chu did not disclose in his original filings that he sold his Mercedes for $46,000 in November of 2011.
8. Chu did not disclose that he sold a Toyota Sequoia for $17,000 in November 2011.
9. Chu has failed to explain a $33,500 discrepancy between his September 30, 2009 personal financial statement which lists "Antique, Gold & Jewelry" in an amount of $35,000 and his Schedule B listing for the same category in an amount of $1,500.
10. Chu failed to list his accountant, Ted Hong, and bookkeeper, Anna Chu, on his SOFA.
11. Chu did not disclose numerous loans he took out against his New York Life insurance policy between November of 2011 and December of 2012, totaling more than $90,000.

*Chu v. State of Texas*, No. 3:14-CV-03584-P, at *6 (N.D. Tex. Sept. 8, 2015) (quoting *In re Chu*, No. 12-37962-HDH-7, at *5).

No. 15-11001

the bankruptcy court and Chu's global denial of discharge. Chu has timely appealed to this court.

## II.

This court reviews the factual findings of the bankruptcy court for clear error and its conclusions of law under a de novo standard of review. *In re Beaubouef*, 966 F.2d 174, 177 (5th Cir. 1992). A bankruptcy court's findings of fact are "clearly erroneous" if "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Duncan*, 562 F.3d 688, 694 (5th Cir. 2009) (quoting *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003)).

## III.

## A.

As an initial matter, Chu challenges the standing of the State of Texas to seek a global denial of discharge under § 727. In support of this argument, Chu contends that any debt owed to Texas fell within the 11 U.S.C. § 523(a)(7) exception to discharge, which states:

> A discharge under . . . this title does not discharge an individual debtor from any debt . . . to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . .

11 U.S.C. § 523(a)(7). If the debt owed to Texas were completely non-dischargeable, Chu argues, the State would not stand to gain any benefit from obtaining a global denial of discharge and therefore ought not to have standing to bring an adversarial proceeding. Chu further argues that any claim against him by the State pursuant to the *qui tam* action is a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit," and is therefore automatically non-dischargeable.

4

No. 15-11001

Chu's argument here is based on speculation. It is unclear whether and to what extent the § 523(a)(7) exception applies to Chu's debt owed to the State of Texas. No final determination regarding the nature of Chu's liability to the State,[2] or its subsequent dischargeability, has been made. Thus, Texas stood to gain by seeking global denial of discharge by way of an adversarial proceeding, thereby satisfying the constitutional standing requirement.

## B.

In the light of our finding that the State possessed standing to object to Chu's discharge, we consider Chu's challenge to the merits of the bankruptcy court's decision. The bankruptcy court first found that Chu had "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." *In re Chu*, No. 12-37962-HDH-7, at *3 (quoting 11 U.S.C. § 727(a)(4)). In doing so, the court acknowledged that to show a "false oath," the creditor must show that the debtor "made a statement under oath," that "the statement was false," that "the debtor knew the statement was false," that "the debtor made the statement with fraudulent intent," and that "the statement related materially to the bankruptcy case." *Id.* at *4. Courts do not simply aggregate a debtor's mistakes to determine fraudulent intent; such intent, however, can be established by a showing of actual intent or "reckless indifference to the truth" based on "the cumulative effect of false statements." *In re Duncan*, 562 F.3d at 695; *In re Beauboeuf*, 966 F.2d at 178.

Based on the series of omissions in Chu's Schedules and SOFA, the bankruptcy court found that Chu acted with at least reckless indifference to

---

[2] Title I, Section 371.1617(b), of the Texas Administrative Code provides that administrative sanctions involving "recoupment, assessment of damages, penalties, recoupment of audit overpayments, or other financial recovery" in the event of a Medicaid overpayment effectively create a "final debt in favor of the State." TEX. ADMIN. CODE ANN. § 371.1617(b) (West 2016). It is therefore possible for a debt in favor of the State under Texas administrative law to fall outside the exception in 11 U.S.C. § 523(a)(7).

the truth in violation of § 727(a)(4).  Chu argues that the bankruptcy court aggregated his mistakes to reach a finding of at least reckless indifference to the truth if not fraudulent intent.  We note that the evidence in the record, including the Rule 2004 examination findings and the trial testimony, supports the bankruptcy court's findings; we therefore disagree with Chu's argument.

The bankruptcy court also found that Chu "failed to explain satisfactorily . . . any loss or deficiency of assets to meet [his] liabilities."  11 U.S.C. § 727(a)(5).  The plaintiff in a discharge adversary proceeding carries the initial burden to show that the debtor possessed "substantial, identifiable assets" that are now "unavailable for distribution to creditors."  *In re Chu*, No. 12-37962-HDH-7, at \*7 (citing *In re Henley*, 480 B.R. 708, 787 (Bankr. S.D. Tex. 2012); *In re Hermanson*, 273 B.R. 538, 545 (Bankr. N.D. Ill. 2002)).  Once the unavailable assets are established, the burden shifts to the debtor to show a "satisfactory" explanation.  *Id.* (citing *In re Reed*, 700 F.2d 986, 992–93 (5th Cir. 1983)).

Chu argues on appeal that the State failed to satisfy its burden of proof to show that he possessed "substantial, identifiable assets" that are now "unavailable for distribution to creditors."  Before the district court, however, Chu argued that his explanation was "satisfactory."  In doing so, he implicitly assumed that the State had met its burden of proof.  Thus, Chu has waived any argument on appeal that the State did not meet its burden of proof under the Section 727(a)(5) analysis.

In any event, we agree with the bankruptcy court's conclusion with respect to § 727(a)(5).  In its analysis under § 727(a)(5), the bankruptcy court considered the State's allegations that Chu failed to explain the following:

> [T]he loss or transfer of an Omega watch, another watch or watches, and/or antique jewelry and gold that he valued at $34,500 on a personal financial statement in September 2009, as well as

No. 15-11001

certain personal effects valued at $41,000 on a personal financial
statement in September 2009.

*Id.* The court further noted that in his amended Schedules, Chu
disclosed $11,000 worth of household items, books and pictures worth $1,000,
and a ring worth $500. Expressing that it was "troubled" by Chu's "inability
at trial to offer any viable explanation as to what happened to the previously
delineated assets," the bankruptcy court concluded that Chu failed to fulfill his
burden to show a satisfactory explanation in order to halt a denial of discharge
under Section 727(a)(5).

The Section 727(a)(5) violation, coupled with the bankruptcy court's
determination that Chu violated Section 727(a)(4), convinced the bankruptcy
court to deny Chu's discharge and further convinced the district court to affirm
the findings of the bankruptcy court. After reviewing the briefs and record,
and after hearing the oral arguments of the parties, we find no reversible error
on the part of the district court.

IV.

In sum, we find that the district court has made no reversible error and
AFFIRM.