In the Matter of Leland H. Baum, Bankrupt.

Leland H. BAUM, Appellant,

v.

EARL MILLIKIN, INC., Appellee.

No. 15367.

United States Court of Appeals
Seventh Circuit.

April 26, 1966.

James P. Burns, Frederick Hersh, John D. Finerty, Milwaukee, Wis., for appellant.

Harry W. Theuerkauf, Ray T. McCann, Milwaukee, Wis., for appellee.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Leland H. Baum appeals from an order of the district court affirming the decision of a referee in bankruptcy which denied him a discharge in bankruptcy on the ground that he failed to satisfactorily explain a loss of assets to meet liabilities within the meaning of section 14(c) (7) of the Bankruptcy Act, 11 U.S.C. § 32(c) (7).

The bankrupt, an experienced real estate broker and general contractor in Milwaukee, filed a voluntary petition in bankruptcy on August 15, 1961. Schedules filed with the petition listed total debts in excess of assets in the amount of $57,381.26. Thereafter, Earl Millikin, Inc., a Milwaukee building contractor and a creditor of the bankrupt, filed four objections to the granting of a discharge. The objections were (1) that the bankrupt failed to keep books of account from which his financial condition might be ascertained; (2) that the bankrupt obtained credit by making a materially false financial statement; (3) that the bankrupt transferred property (materially depreciating his assets) from corporations controlled by him with intent to defraud creditors; and (4) that the bankrupt failed to satisfactorily explain a loss of assets to meet liabilities.

The referee overruled the first three objections, but sustained the fourth and denied a discharge in bankruptcy. Both the bankrupt and the objecting creditor petitioned for review of the referee's decision. The district court affirmed the referee's order in its entirety. The bankrupt appeals.

The sole question is whether the findings of the referee sustaining the fourth

objection to discharge are clearly erroneous.

The evidence introduced before the referee showed that the bankrupt submitted a personal financial statement to Dun and Bradstreet in January 1960. This financial statement disclosed assets of $425,841 and liabilities of $116,482—a net worth of $309,359—as of November 30, 1959. As mentioned, the bankruptcy schedules showed liabilities in excess of assets in the sum of $57,381.26. Thus, in the twenty-one month period from the date of the financial statement to the date of the petition in bankruptcy, a loss of assets totalling $366,740.26 was indicated. The bankrupt's federal income tax return for 1960 showed net business and property losses in the amount of only $3,572.26. From this information, the referee properly concluded that reasonable grounds had been shown for believing that the bankrupt failed to comply with section 14(c) (7) of the Bankruptcy Act. Therefore, the referee, in accordance with the statute, shifted the burden of explaining the loss of assets to the bankrupt and, not being satisfied with the explanation given, sustained the objection to discharge.

The bankrupt makes two arguments for the sufficiency of his explanation to the referee of the rapid disintegration of his holdings. First, the bankrupt says that his financial deterioration resulted more from a "shrinkage" in the value of the assets listed in his January 1960 financial statement than from an actual "loss" of assets. He points out that the bulk of the assets listed in the financial statement consisted of his interest in a number of closely held corporations concerned with real estate development and management. The value placed upon his interest in these corporations, he says, necessarily represented his opinion of the market value or potential earning power of the properties owned by the corporations. The bankrupt then makes the observation that his opinions of value were not borne out in every instance and also suggests that the real estate market may have suffered a general reversal. This argument, as a portion of the bankrupt's explanation of a loss of assets, finds little support in the record.

The testimony offered by the bankrupt before the referee does not permit the conclusion that a sufficient "shrinkage" of assets resulted from either the vagaries of the real estate market or from the bankrupt's overvaluation errors. The bankrupt did not pursue the possibility of a general reversal in the real estate market at all. And although his financial statement valuations proved optimistic in some instances, the record shows that the "shrinkage" referred to by the bankrupt was occasioned primarily by a failure to explain what became of the proceeds from the sale or other disposition of his interest in the closely held corporations, rather than by the initial overvaluation of his assets. For example, the bankrupt's financial statement listed the value of his interest in Humboldt Developers, Inc., which owned an apartment building in Milwaukee, at $46,338. An independent appraisal of the building at approximately the same time placed the value of the bankrupt's interest at $54,000. In his testimony before the referee, the bankrupt stated that he transferred his interest in Humboldt to a partner in the same corporation in payment of unidentified "plumbing bills" incurred in connection with the Glenport project. Glenport was a home-construction project in suburban Milwaukee in which the bankrupt owned half the stock. The bankrupt would have us believe that this testimony satisfactorily accounts for a "shrinkage" of assets in the amount of $46,338. As another example, the bankrupt's financial statement listed his interest in the Silver Spring Development Company at $35,000. The bankrupt testified that his interest was sold to the Silver Spring Investment Company for $20,000 and that the money was used in the normal course of business. He suggests that this accounts for a "shrinkage" of $35,000. Many other examples of a similar character could be employed, but these are sufficient to show that the bankrupt's first argument is without merit.

Secondly, the bankrupt argues that his "shrinkage" of assets was sufficiently explained by the collapse of the Glenport project. He says that when the market for the homes in this project did not meet expectations, his contemplated profits were wiped out and he was forced to sacrifice his personal fortune in an attempt to save the project. But the bankrupt's testimony in this respect was also unconvincing. The evidence showed that the construction loans on the Glenport project exceeded the construction costs. Yet the bankrupt testified that the proceeds from the sale of certain of his assets were used to pay construction bills on the same project. The objecting creditor itself has an unpaid claim of over $72,000 stemming from construction work at Glenport. The bankrupt offered no explanation of these glaring inconsistencies.

A "satisfactory explanation" of a loss of assets to meet liabilities within the meaning of section 14(c) (7) of the Bankruptcy Act must consist of more than the vague, indefinite, and uncorroborated hodgepodge of financial transactions presented by the bankrupt in this case. In re Sperling, 72 F.2d 259, 261 (2d Cir. 1934). The referee in bankruptcy has reasonably broad discretion to accept or reject an explanation designed to satisfy an objection made under this section, and when his decision has been upheld by the district court it should not be reversed on appeal "except for the most cogent reasons." Minella v. Phillips, 245 F.2d 687, 690 (5th Cir. 1957). The bankrupt contends that if his explanation was insufficient, the insufficiency was somehow caused by his being prevented from explaining the dissipation of the assets listed in his financial statement. In this regard the bankrupt has confused estoppel with his burden of proof.. As the district court observed, as a result of the bankrupt's eagerness to defend the accuracy of his financial statement under the second objection to discharge (obtaining credit on the strength of a materially false financial statement), the bankrupt accentuated his burden of explaining, under the fourth objection to discharge, a shrinkage of approximately $350,000 in assets in a period of twenty-one months. The bankrupt was given every opportunity to satisfactorily explain the loss in any manner he chose, but this he failed to do.

The order of the district court is affirmed.