**Arthur Dee NEWCOMB, et ux., Appellants,**

v.

**LAMAR TRUST CO., et al., Appellees.**

No. 85–5026–CV–SW–4.

United States District Court,
W.D. Missouri,
Southwestern Division.

Sept. 20, 1985.

Arthur B. Federman, Gregory D. Kincaid, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P.C., Kansas City, Mo., for appellants Arthur Dee Newcomb and Patricia Rae Newcomb.

Mark E. Fitzsimmons, Fitzsimmons and Schroeder, Springfield, Mo., for appellees Lamar Trust Co., Lamar Farmers Exchange, and Sac River Valley Bank.

## ORDER

RUSSELL G. CLARK, District Judge.

This is an appeal from the decision of the United States Bankruptcy Court for the Western District of Missouri, Southwestern Division, 51 B.R. 276. The appellants, (hereinafter referred to as debtors) filed for liquidation under Chapter 7 of the Bankruptcy Code. Appellees are three creditors of the plaintiffs (hereinafter referred to collectively as creditors). Creditors filed a complaint seeking a denial of discharge in bankruptcy of the debtors under 11 U.S.C. § 727. The creditors asserted several grounds for denial, however, the bankruptcy judge found only one ground to be applicable. Accordingly, the debtors were denied a discharge under 11 U.S.C. § 727(a)(5). The debtors assert as error that the bankruptcy judge misapplied the burden of proof and further, that they have met their burden of proof and that they should be discharged from their debt. The appeal of the debtors is without merit and the decision will be affirmed.

The facts as found by the bankruptcy judge indicate that on May 10, 1979, and again in October of 1980, the debtors issued financial statements setting forth their assets and liabilities. These financial statements were used by the creditors and relied upon by them in issuing certain loans to the debtors. The debtors, as husband and wife, filed a voluntary petition for bankruptcy on August 11, 1982. Attached to the petition were the customary schedules of assets and liabilities. A review of these schedules indicates that the debtors' net worth had decreased dramatically in the two to three year period preceding bankruptcy. Although the creditors first alleged that the assets on the financial statements issued by the debtors were overstated, the bankruptcy judge found that there was no direct evidence of any significant overstatement of the assets which were actually in existence on the

dates of the rendition of the financial statements. The creditors asserted that there was no satisfactory explanation for the decrease in net assets between the dates of the financial statement and the date of filing for bankruptcy. Hearings were held and on November 10, 1983, the bankruptcy judge issued an order denying a discharge to the debtors on the ground that the debtors had failed to explain the decrease in net assets as required by 11 U.S.C. § 727(a)(5). On November 18, 1983, the debtors filed a motion for reconsideration of the court's order. The bankruptcy judge analyzed the motion of the debtors and on January 25, 1984 issued an order directing defendants to show cause why their motion should not be denied specifically setting forth the reasons which he believed justified such a denial. On March 5, 1984, the debtors responded to the bankruptcy judge's show cause order and submitted additional evidence in support of their motion for reconsideration. Finally, on January 4, 1985, the bankruptcy judge issued an order denying the defendant's motion to alter or amend the judgment and further denied the debtors their discharge in bankruptcy for the above-noted reasons. The debtors duly perfected an appeal to this Court and both sides have filed briefs on appeal. For the following reasons, the decision of the bankruptcy judge will be affirmed.

Under Bankruptcy Rule 810, a reviewing court must accept the bankruptcy judge's factual findings unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Company*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *First National Bank of Clinton v. Julian*, 383 F.2d 329 (8th Cir.1967). The reviewing court is not so limited when a bankruptcy judge's error is one of law consisting of giving wrong legal significance to the facts. *Solomon v. Northwestern State Bank*, 327 F.2d 720 (8th Cir.1964). The reviewing court is free to make an independent determination of

the law. *Walker v. Commercial Nat. Bank of Little Rock, Ark.*, 217 F.2d 677 (8th Cir.1954). It is with these standards in mind that this Court proceeds with its analysis.

11 U.S.C. § 727 states:

The court shall grant the debtor a discharge, unless ... (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

Research has failed to disclose any Eighth Circuit cases specifically dealing with the provisions of 11 U.S.C. § 727(a)(5); however, this Court believes the decision in *Baum v. Earl Millikin, Inc.*, 359 F.2d 811 (7th Cir.1966) to be highly persuasive. In that case it is stated that:

A 'satisfactory' explanation of a loss of assets to meet liabilities within the meaning of § 14(c)(7) of the Bankruptcy Act must consist of more than the vague, indefinite, and uncorroborated hodgepodge of financial transactions presented by the bankrupt in this case. *In Re Sperling*, 72 F.2d 259, 261 (2d Cir.1934). The referee in bankruptcy has reasonably broad discretion to accept or reject an explanation designed to satisfy an objection made under this section, and when his decision has been upheld by the district court it should not be reversed on appeal "except for the most cogent reasons." *Minella v. Phillips*, 245 F.2d 687, 690 (5th Cir.1957).

359 F.2d at 814.

■ Debtors first state as error that in order for § 727(a)(5) to apply, there must be a particular asset missing and that a mere diminution in value is insufficient. In support of this proposition the defendant cites *In re D'Avignon*, 25 B.R. 838, 841 (B.R. D.Ver. 1982). This Court does not believe that such a finding is necessary in all cases. The debtors attempt to distinguish the *Baum* decision but their argument is not convincing. In *Baum* the court stated:

The evidence introduced before the referee showed that the bankrupt submitted a personal financial statement to Dun & Bradstreet in January, 1960. This financial statement disclosed assets of $425,841 and liabilities of $116,482–a net worth of $309,359–as of November 30, 1959. As mentioned, the bankruptcy schedules showed liabilities in excess of assets in the sum of $57,381.26. Thus in the 21 month period from the date of the financial statement to the date of the petition in bankruptcy, a loss of assets totaling $366,740.26 was indicated. The bankrupt's federal income tax return for 1960 showed net business and property losses in the amount of only $3,572.26. From this information, the referee properly concluded that reasonable grounds had been shown for believing that the bankrupt failed to comply with § 14(c)(7) of the Bankruptcy Act. Therefore, the referee, in accordance with the statute, shifted the burden of explaining the loss of assets to the bankrupt and, not being satisfied with the explanation given, sustained the objection to discharge.

359 F.2d at 813. Furthermore, the record on appeal indicates that in addition to the diminished value of the debtors' realty and cattle, specific assets are also missing from Schedule B–1 such as the debtors' retirement fund and profit sharing fund. These items were on the financial statements of the debtors dated May 10, 1979 which was introduced into evidence by Lamar Farmer's Exchange, one of the creditors. These items go into the calculation of net assets. It is true that the creditors never interrogated the debtors regarding the disappearance of these assets. However, having concluded that the burden of proof shifted to the debtors to explain the decrease in net assets, it was their obligation to explain the loss of these items as well as the diminished value of the realty and cattle.

■ The debtors next argue that even if the burden of proof was properly upon them, they have satisfactorily explained their decrease in net worth. This Court cannot agree. The findings of fact of the Bankruptcy Court indicate that the debtors showed total assets as of October 9, 1980 of $1,803,122.57. In addition, the debtors

showed liabilities of $850,169.22, thus indicating a net worth of $952,953.35. When the debtors filed their petition in bankruptcy they showed assets of $283,505.89 and liabilities of $824,044.12 indicating a negative net worth of $540,538.23. Accordingly, in less than two years preceding bankruptcy, the debtors' net asset position decreased by $1,493,491.58. It is this decrease which the debtors must explain.

Considering the assets on an item by item basis, and taking the facts in the light most favorable to the plaintiff, this Court concludes that the debtors are far short of accounting for this decrease in assets. First, as to the debtors' investment in real estate, the bankruptcy judge in his show cause order of January 25, 1984, found that there was depreciation in the value of the realty to the extent of $328,768.50 (see order of January 25, 1984 at p. 3). In response to the show cause order the debtors drew attention to the fact that the bankruptcy judge had failed to consider the value of several parcels of realty which were, for one reason or another, omitted from Schedule B–1 of the debtors' petition. However, the debtors' response erroneously adds the value of some parcels twice: 514–518 E. 4th Street; 400 and 404 Macon; 706 Grant; and 502 Macon were added on page 4 of debtors' response but had also been added earlier therein. Accordingly, debtors' response of March 5, 1984 to the bankruptcy judge's show cause order provides an additional explanation only in the amount of $365,972.36.

The debtors' cattle losses also provide some explanation for the decline in net assets. On debtors' financial statement of May 10, 1979, they disclosed an investment in cattle of $515,000. Dr. Newcomb testified that shortly after this statement was issued the price of cattle dropped from $1.20 per lb. to $.55 or $.60 per lb. due to a presidential ceiling on beef prices (Tr. of April 1, 1983, at p. 44). Dr. Newcomb further testified that some of the cattle became inflicted with Bang's disease and had to be sold at a reduced price (Tr. of April 29, 1983 at p. 50–52). Finally, Dr. Newcomb testified that $10,000 to $11,000 worth of cattle got through a fence and

were apparently sold by a neighbor (Tr. of April 29, 1983 at p. 54). Considering all of the above, it is apparent that the entire herd was eventually sold for a total price of $265,171.00. Subtracting this from $515,-000.00 results in a loss of $249,829.00. This loss also partially explains the decrease in net worth.

The debtors' operating losses for the years in issue might also explain some of the decrease in net assets. Although the debtors did not come forth with direct evidence of their losses for the years in issue, the debtors should be given the benefit of the doubt in this matter. The bankruptcy judge found that in 1979 the debtors incurred a loss of approximately $39,000.00. If this activity continued for the years leading up to bankruptcy, it is possible that the debtors may have lost $78,000.00 due to operational expenses between October of 1980 and the date of filing for bankruptcy.

Finally, it appears that several lawsuits have been filed against Dr. Newcomb. Although consideration of these liabilities may result in counting them twice, since the lawsuits may pertain to debts which were already existing at the date of the financial statements, once again the debtors will be given the benefit of the doubt. The suits listed on the debtors' schedule of liabilities are for $58,800, $104,000, $50,000 and $21,207. In addition, the debtors have incurred attorney's fees of approximately $3,000. This results in a total increase in liabilities of $237,007. The debtors also have incurred a real estate commission which remains unpaid in the amount of $6,000.

Considering all of the above as possible explanations for the decrease in net assets between October of 1980 and the date of filing, the grand total is shown below:

| | |
|---|---|
| Loss due to decline in Real Estate | |
| Per Bankruptcy Judge | 328,768.50 |
| Debtors' requested additions | 365,972.36 |
| Cattle Loss | 249,829.00 |
| Operating Loss | 78,000.00 |
| Lawsuits | 237,007.00 |
| Commissions due | 6,000.00 |
| Total Possible Explanations: | 1,265,576.86 |

| | |
|---|---|
| Total Decrease in Net Assets | 1,493,491.58 |
| Less Total Possible Explanations | 1,265,576.86 |
| Unexplained Loss | 227,914.72 |

Thus, giving the debtors every possible benefit of the doubt, the debtors' explanations fall short by more than $200,000. The bankruptcy judge was also unable to account for over $200,000, and determined that this was "too much unaccountability for the court to suffer in determining whether discharge should be denied, particularly when the figure has been arrived at, as noted above, by drawing many inferences from the evidence in favor of the debtors...." (Findings of fact and conclusions of law dated November 10, 1983 at p. 10–11). This Court must agree with the bankruptcy judge that the lack of any explanation for over $200,000 cannot be considered "satisfactory" under the statute. 11 U.S.C. § 727(a)(5).

Accordingly, and for the foregoing reasons, it is hereby

ORDERED that the decision of the Bankruptcy Judge is affirmed.