**In re Mary ROSS, Debtor.**

**Nuvell Credit Corporation, Plaintiff,**

**v.**

**Mary Ross, Defendant.**

**Bankruptcy No. 06 B 04921.**
**Adversary No. 06 A 01147.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 1, 2007.

Ross ("Debtor" or "Defendant"). Nuvell Credit Corporation ("Nuvell" or "Plaintiff") filed this Adversary Complaint objecting to Defendants/Debtors' discharge under two provisions of the Bankruptcy Code, 11 U.S.C. §§ 727(a)(2) and 727(a)(5). Nuvell is a creditor of the Debtor with respect to a certain indebtedness secured by a lien on a 2004 Chevrolet Cavalier motor vehicle (the "Vehicle").

## BACKGROUND

Nuvell contends that Debtor intentionally and with intent to hinder, delay or defraud Plaintiff transferred the Vehicle or concealed or removed it to hide it from Nuvell either within one year before the date of the filing of her bankruptcy petition or after the date of filing of the petition in violation of § 727(a)(2). Alternatively, Nuvell argues that Debtor provided such contradictory or unsatisfactory explanations as to the Vehicle's loss or disappearance, as to warrant a prohibition of discharge under § 727(a)(5).

Debtor contends that the Vehicle was towed while she was at work. She asserted her initial belief that Nuvell had repossessed the Vehicle because she had not made timely payments. After becoming aware that Nuvell was not in possession of the Vehicle, Debtor testified that she made many attempts to locate it, but was unsuccessful. Debtor denies knowledge as to location of the Vehicle. Nuvell argues that Debtor concocted her story and is not being truthful.

The instant Adversary proceeding was tried, evidence taken, the parties rested, and the Court now makes and causes to be entered the following Findings of Fact and Conclusions of Law. Because the preponderance of evidence did not establish either an improper intent to delay, hinder or

David Cybak, Robert Cybak, R. Cybak & Associates, Chicago, IL, for Plaintiff.

Mary Ross, Chicago, IL, pro se.

Dean Paolucci, Select Legal, P C, Chicago, IL, for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary Proceeding relates to the Chapter 7 bankruptcy case of Mary

defraud creditors through concealment of the Vehicle or that Debtor has failed to explain satisfactorily any loss of assets, judgment will enter in favor of Debtor.

### FINDINGS OF FACT

1. On June 22, 2004, the Debtor entered into a motor vehicle retail installment contract for the purchase and financing of a 2004 Chevrolet Cavalier, Vehicle Identification Number 1G1JC52F747261660 (the "Vehicle"), with Sunrise Chevrolet Inc.

2. The contract was immediately assigned for value to Nuvell, who is the current holder of the contract.

3. Pursuant to the contract, Debtor financed an unpaid balance of $19,174.37 with 13.90% interest over 60 months, payable in monthly installments of $445.16.

4. Each payment was due on the 22nd day of each month beginning July 22, 2004.

5. On August 26, 2005, the Debtor was in default on her payments for July and August 2005. Debtor was then informed by Nuvell that she might get a deferment of these payments.

6. The Debtor failed to make her payment due September 22, 2005, or any further payments to Nuvell.

7. As of October 27, 2005, the Debtor was in default for the payments due for September and October, 2005.

8. On December 14, 2005 Nuvell filed a detinue action against Debtor in state court seeking, among other things, possession of the Vehicle.

9. On January 25, 2006 a judgment in detinue was entered against Debtor in that action granting Nuvell the right to possession of the Vehicle and requiring Debtor to return it to Nuvell within in five days. (Nuvell Ex. 12.)

10. On May 3, 2006, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, with the aid of her bankruptcy counsel.

11. In Schedule B, Personal Property, Debtor listed two automobiles: a 2005 Chevrolet Impala ("Impala") and a 2004 Chevrolet Cavalier (the "Vehicle"). (Nuvell Ex. 1.)

12. The Debtor's Statement of Intention filed with her Bankruptcy Petition stated that it was Debtor's intention to surrender the Cavalier Vehicle to Nuvell and reaffirm the contract on the Impala.

13. On May 15, 2006, Nuvell obtained relief in this Court from the automatic stay to allow it to obtain possession of and proceed to sale of the Vehicle.

14. On April 24, 2006 Debtor filed a vehicle theft report with the Chicago Police Department. (Nuvell Ex. 17.) The narrative to the vehicle theft report stated, "IN SUMMARY OWNER RETURNED TO DISCOVER THE ABOVE VEHICLE MISSING. VIN GIVEN." *Id.* The Vehicle Identification Number provided was that of the Cavalier Vehicle. *Id.* The date of occurrence listed was April 23, 2006. *Id.* The address of the theft was listed as the backyard of 312 N. Hamlin, Chicago, Illinois. *Id.;* (Nuvell Ex. 1.)

15. Nuvell attempted to obtain possession of the Vehicle from Debtor through self-help repossession on several different occasions between May 30, 2006 and June 7, 2006.

16. In Answers to Interrogatories, Debtor stated, "I was call[ed] in September of 2005 [and told] that my car where [sic] being towed. By a black tow truck driver." (Nuvell Ex. 6.)

17. In Debtor's Statement of Financial Affairs, under "Repossessions, foreclosures and returns," Debtor specified that no property "has been repossessed by a credi-

tor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case ..." (Nuvell Ex. 1.)

18. In Debtor's Statement of Financial Affairs, under "Losses," Debtor specified that there have not been any "losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or **since the commencement of this case** ..." (Nuvell Ex. 1.)

19. To date, Debtor has not turned over the Vehicle to Nuvell or to otherwise make the Vehicle available to Nuvell.

20. Currently, Debtor is in default for the monthly payment of $445.16, due September 22, 2006, and each month thereafter, for a total default of $5,203.75 including late charges and miscellaneous fees.

21. Statements of fact contained in the Conclusions of Law shall constitute additional Findings of Fact.

## *CONCLUSIONS OF LAW*

### *JURISDICTION*

Jurisdiction lies under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) and has been referred by the District Court pursuant to District Court Internal Operating Procedure 15(a). Venue is proper in this District under 28 U.S.C. § 1409(a).

### *DISCUSSION*

#### *Introduction*

Nuvell seeks to bar Debtor's discharge based on 11 U.S.C. §§ 727(a)(2) and 727(a)(5). Nuvell did not bring this action as one under § 523(a) of the Bankruptcy Code. Section 523(a) provides a variety of grounds upon which a claim of a particular creditor against the debtor may be found to be non-dischargeable. A judgment of non-dischargeability under § 523(a) only benefits the debt owed to the particular objecting creditor and has no impact on the claims of other creditors. If a creditor's objection is sustained, his particular debt will be exempted from discharge, but debtor will still be entitled to discharge her remaining debts.

> [I]n joining an objection to discharge under § 727(a), a private creditor assumes something of the role of a trustee. Section 727(a) is directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engaged in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on, or injury to, a single creditor.

*In re Harrison,* 71 B.R. 457, 459 (Bankr. D.Minn.1987).

■ However, under language of the statute, a single creditor protesting a harm only to itself is entitled to bring an action under § 727. In this case, one creditor seeks to bar Debtor's discharge for the loss of property benefitting only it and no other creditor.

■ Denial of discharge has a heavy impact on a debtor. *Bernard v. Sheaffer (In re Bernard),* 96 F.3d 1279, 1283 (9th Cir.1996). Consistent with the "fresh start" purposes underlying the Bankruptcy Code, courts therefore construe provisions of § 727 liberally in favor of debtors and strictly against parties objecting to discharge. *Id.* at 1281. On the other hand, the "fresh start" policy of the Bankruptcy Code is appropriately limited to the honest debtor. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### *Discharge— § 727*

#### A. *Section 727(a)(2)*

Section 727(a)(2) states in relevant part:

(a) The court shall grant the debtor a discharge unless—

* * *

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

This provision requires proof either that the debtor transferred or concealed property of the Debtor prior to bankruptcy filing or property of the bankruptcy estate after filing, and in either case has done so with the intent to hinder, delay, or defraud a creditor of the estate or the Chapter 7 Trustee. *Cmty. Bank of Homewood– Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 926 (Bankr.N.D.Ill.1992).

■■ The exception to discharge in § 727(a)(2)(A) essentially "consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *In re Kontrick*, 295 F.3d 724, 736 (7th Cir.2002) (citing *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993)). If the act took place prior to a bankruptcy filing, "[t]he party seeking to bar discharge must prove that *both* of these components were present during the one year before bankruptcy; anything occurring before that one year period is forgiven." *Id.*

■■■ While actual intent is difficult to prove, it may be shown via circumstantial evidence. Opinions have adopted a series of factors which indicate actual fraud if proven:

(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir.2002) (citing *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir.1989)). If the creditor can show that one or some of these factors are met, "[t]his creates a presumption of an intent to defraud establishing plaintiff's prima facie case and shifting . . . the burden [to the debtor-defendant] of demonstrating that [s]he lacked fraudulent intent." *Id.*

■ Plaintiff argues that Debtor violated § 727(a)(2)(A) by transferring, removing, destroying, mutilating or concealing the Vehicle from Nuvell within one year of the filing of her bankruptcy petition with the intent to hinder, delay, or defraud Nuvell. However, as discussed below the preponderance of evidence does not show either that Debtor concealed the Vehicle or that she acted with the requisite intent to hinder, delay, or defraud Nuvell or Chapter 7 Trustee (the "officer of the estate . . ." after bankruptcy is filed).

The following evidence was admitted and must be considered: (1) Debtor's Statement of Financial Affairs specifying that none of her property had been repossessed within the year before she filed the bankruptcy petition (Nuvell Ex. 1); (2)

Debtor's Schedules in which she stated her intention to surrender the Vehicle (Nuvell Ex. 1); (3) Debtor's Answer to the Adversary Complaint in which Debtor asserted that the Vehicle was towed by a repossession contractor in September 2005 (Nuvell Ex. 4); (4) Debtor's answer to interrogatories in which she asserted that the Vehicle was towed pre-bankruptcy in September 2005 (Nuvell Ex. 6); (5) a vehicle theft police report filed by Debtor indicating the Vehicle is missing and was stolen pre-bankruptcy in April of 2006 (Nuvell Ex. 17); and (6) testimony of Debtor and her niece Jennifer Ivory supporting Debtor's assertion that the Vehicle was towed away thereby causing them to believe it had been repossessed, but if not repossessed was thereby stolen; and evidence from Plaintiff tending to show that it never repossessed the Vehicle.

Reaching a decision in this case involved a careful unraveling of all the evidence as well as a determination of witness credibility. It is concluded that the following description of events is most likely.

On August 26, 2005, Debtor defaulted in her payments to Nuvell. While Nuvell and Debtor disagree as to the specific date, at some point between September and November 2005 Debtor told Nuvell that she wanted to surrender the Vehicle voluntarily because she could not afford to make the payments. (Compl. ¶ 13; Answer ¶ 13; Trial Tr., Dkt. 23, 15, Dec. 8, 2006.) Debtor then received a telephone call while at work from a man identifying himself as Mr. Wilson, a repossession contractor explaining that he was going to pick up the Vehicle. (Answer ¶ 16; Trial Tr., Dkt. 22, 24–26, Dec. 15, 2006.) Debtor gave him directions to 312 N. Hamlin, Chicago, Illinois, where the Vehicle was located. *Id.*

Later that same day, Debtor received a telephone call from Jennifer Ivory, her niece, informing her that the Vehicle was being towed. At that time, Jennifer Ivory was at the 312 N. Hamlin, Chicago, Illinois location. (Trial Tr., Dkt. 22, 9, Dec. 15, 2006.) From that information, Debtor assumed that Nuvell repossessed the Vehicle.

In January 2006 Debtor received notice that she needed to attend a state court proceeding in DuPage County as Nuvell was seeking possession of the Vehicle. (Trial Tr., Dkt. 23, 29–30, Dec. 8, 2006.) It was then that Debtor discovered that Nuvell did not have the Vehicle. (Nuvell Ex. 10.) While attending the Dupage County proceeding, Debtor informed Kathleen Haggerty, an attorney for Nuvell, that she did not know the whereabouts of the Vehicle. (Trial Tr., Dkt. 23, 31, Dec. 8, 2006.) Haggerty explained that it was Debtor's responsibility to find the Vehicle or file a police report. (Trial Tr., Dkt. 22, 36–37, Dec. 15, 2006; Trial Tr., Dkt. 23, 28, Dec. 8, 2006.)

Following these instructions, Debtor attempted to locate the Vehicle by calling the City of Chicago Auto Pound and by visiting its location at 701 N. Sacramento Avenue. (Trial Tr., Dkt. 22, Dec. 15, 2006.) According to Debtor, "I called the police impound. I have been going by junk yards. I have been going everywhere." *Id.* Despite her diligent efforts, Debtor could not locate the Vehicle.

On April 23, 2006 Debtor filed a vehicle theft report with the City of Chicago Police Department identifying the Vehicle as "missing," listing April 23, 2006 as date of occurrence. (Nuvell Ex. 17.) On May 3, 2006, the Debtor filed her petition for relief under Chapter 7 of the Bankruptcy Code.

Debtor's testimony as to the towing was corroborated by Debtor's niece, Jennifer Ivory. Ivory testified that the last time

she saw the Vehicle it was located in the parking lot adjacent to the apartment building located at 312 N. Hamlin, Chicago, Illinois. (Trial Tr., Dkt. 22, 6, Dec. 15, 2006.) Ivory stated that she knew what happened to the Vehicle.[1] *Id.* at 8. According to her, while she was in the kitchen, she saw the Vehicle get towed by a black man wearing overall denim blue jeans, a dark blue shirt, and driving a red tow truck. *Id.* Debtor was at work during this incident. *Id.* Ivory testified that Debtor probably did not drive to work that day, but rather got a ride from a coworker because the Vehicle did not have any gas. *Id.* After witnessing the Vehicle being towed, Ivory called the Debtor at work. *Id.* at 9.

Ivory's testimony also related that it was not uncommon for cars to be towed from this particular parking lot. Ivory testified that both her car and her neighbor's car had been towed on prior occasions. (Trial Tr., Dkt. 22, 21, Dec. 15, 2006.) Because Ivory could not afford to retrieve her car, she never did find out what happened to it. *Id.* at 22.

Argument by Counsel for Nuvell implied that Debtor defaulted on her payments to it on the Cavalier Vehicle because she was making payments on the Impala. (Nuvell Findings of Fact, ¶ 23.) This is not supported by the evidence. Debtor and Paul Porter, the father of Debtor's child, were co-buyers of the Impala. Porter, not Debtor, made and continues to make all payments due on the Impala. (Trial Tr., Dkt. 23, 6, Dec. 8, 2006.) Debtor stated, "Paul Porter was paying [the payments due for the Impala] because it was his car." (Trial Tr., Dkt. 23, 16, Dec. 8, 2006.)

It is clear from Debtor's testimony that she did not fail to make payments to Nuvell because she was paying for the Impala. Rather, it is clear that Debtor could not afford either car payment.

Counsel for Nuvell attempts to discredit Debtor's version of the events by placing emphasis on the information provided in the vehicle theft report. In that report, Debtor indicated that the date of occurrence was April 23, 2006. (Nuvell Ex. 17.) In contrast, according to Debtor's trial evidence the Vehicle was towed in September 2005. In filing the police report, Debtor was acting without counsel and understood that the report was required. (Trial Tr., Dkt. 23, 28–31, Dec. 8, 2006.) She did not know that she could provide a retroactive date of occurrence in the vehicle theft report. (Trial Tr., Dkt. 23, 31, Dec. 8, 2006.)

It should be noted that by filing the vehicle theft report, Debtor deprived herself of any possible use the Vehicle. Because of the vehicle theft report, the Vehicle is currently reported as stolen. Debtor would therefore not be able to obtain the appropriate vehicle stickers or license plates. Moreover, in the event Debtor was caught driving the Vehicle by law enforcement, she could incur various criminal penalties. Debtor was clearly aware that filing the vehicle theft report would cause such consequences if in fact she had the car. (Trial Tr., Dkt. 21, Dec. 15, 2006; Trial Tr., Dkt. 20, 16, Dec. 8, 2006.) Nevertheless, because Debtor was in fact not in possession of the Vehicle and did not hide the Vehicle she filed the theft report.

At trial, counsel for Nuvell argued that "She [the Debtor] was actively concealing this car to the detriment of Nuvell because

---

1. It should be noted that during her testimony, Ivory referred to the Vehicle as a white Saturn. The Vehicle, however, is a white Chevrolet Cavalier. (Nuvell Ex. 17.) Ivory's misstatement of the exact make of the car does not discredit her testimony as it was clear from her testimony that she knew which vehicle was Debtor's. Further, it is not hard to believe that Ivory could confuse the exact make of the Vehicle.

she knew that she was past due under her retail installment contract." (Trial Tr., Dkt. 21, 15, Dec. 15, 2006.) He further suggested, "Ms. Ross has hidden this car since at least November 04 of '05 ... or September 4th of '05 to date and Exhibit 1, her bankruptcy filings, confirms that." (Trial Tr., Dkt. 20, 11, Dec. 8, 2006.) The evidence presented did not tend to support those statements.

The Debtor's bankruptcy filings do not confirm that she is in possession of the Vehicle or hid the Vehicle at any point. Her Statement of Financial Affairs did report that no property had been repossessed within a year of filing the bankruptcy petition, and the trial testimony tended to show that the Vehicle had been towed and was believed to have been stolen in September 2005, eight months before she filed her bankruptcy case. By the time she filed bankruptcy, she had learned through Nuvell's detinue action that the Vehicle had not been repossessed.

Debtor's Schedules indicate that she wished to surrender the Vehicle to Nuvell even thought at that time she was not in possession of the Vehicle and had (by her testimony) learned that it had been stolen. This does not indicate that Debtor's version of events is false. It is clear that Debtor's intention *was* to surrender the Vehicle. Whether it was stolen, removed by a third party, or repossessed by Nuvell, Debtor at all times credibly testified that she intended to surrender the Vehicle and had no intent to keep it or recover it. Therefore, nothing in Debtor's bankruptcy filings necessarily infer or confirm that she is hiding the Vehicle or is aware of its whereabouts.

Debtor's version of events is not materially inconsistent with evidence presented by Nuvell. Debtor originally believed that a repossession contractor for Nuvell was the party who towed the Vehicle, while Nuvell's evidence showed that it did not repossess the Vehicle. It is not inconsistent to find that neither party is aware of the Vehicle's location.

The credibility of testimony by Debtor and her niece must be evaluated. Responsibility of the trier of facts in this regard is significant because "great weight will be given to the factual findings of the bankruptcy judge who is in the best position to access the credibility of the witness appearing in court." Collier on Bankruptcy 15ed. 6–727 Collier on Bankruptcy–15th Edition Rev. P 727.08.

"[Q]uestions of credibility are solely for the trier of fact ... who has the best opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." *United States v. Hatchett*, 31 F.3d 1411, 1417 (7th Cir.1994) (citing *United States v. Duarte*, 1 F.3d 644, 651 (7th Cir.1993)).

While Nuvell may not be satisfied with the testimony provided by Debtor and her niece, it is found that their testimony was forthright and credible. After observing their testimony and responses to a sharp cross-examination, and also their facial expressions, attitude, tone of voice, and eye contact, the trial judge is convinced that this testimony was credible. Debtor went through two days of testimony and cross-examination without the benefit of counsel to assist her. She was found to be completely honest in her testimony, responded to any questions presented, and provided as thorough answers as possible. The same can be said for her niece who testified over a shorter period.

Based on the foregoing discussion, it is concluded that Nuvell has failed to prove by a preponderance of evidence either that Debtor acted with the intent to hinder, delay, or defraud Nuvell or that she concealed the auto, as required under § 727(a)(2). Debtor's discharge will therefore not be denied under the provision.

### B. *Section § 727(a)(5)*

Section 727(a)(5) provides that a discharge should be denied if, "the debtor has failed to explain satisfactorily * * * any loss of assets or deficiency of assets to meet the debtor's liabilities ..." 11 U.S.C. § 727(a)(5).

 Under § 727(a)(5), the Debtor/Defendant should be denied her discharge if she fails to satisfactorily explain any loss of assets or deficiency of assets to meet the debtor's liabilities, *Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr. N.D.Ill.1988). In this case she must explain loss of the Vehicle. What constitutes a "satisfactory" explanation for § 727(a)(5) purposes is left to the discretion of the court. *In re Baum*, 359 F.2d 811, 814 (7th Cir.1966); *Potter*, 88 B.R. at 849. *See also In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984). A debtor's explanation must consist of more than a "vague, indefinite and uncorroborated hodgepodge of financial transactions." *Baum*, 359 F.2d at 814. "Instead, it must be a good faith explanation of what really happened to the assets in question." *Potter*, 88 B.R. at 849.

 The creditor has the initial burden of identifying the asset in question by showing that the debtor at one time had the asset but it is no longer available for the debtor's creditors. *Bodenstein v. Wasserman*, 332 B.R. 325, 333 (Bankr. N.D.Ill.2005). Once the creditor has shown by a preponderance of the evidence the disappearance of a substantial asset, the burden shifts to the debtor to explain satisfactorily the loss or deficiency. *In re Martin*, 698 F.2d 883, 887–88 (7th Cir. 1983).

 In this case, Nuvell met its initial burden. It proved that Debtor possessed the Vehicle pre-bankruptcy, and the asset is no longer available to Debtor's creditor, Nuvell. Nuvell made attempts to locate and seize the Vehicle, but has been unsuccessful. Therefore, the burden shifted to Debtor who was required to come forward with evidence to "explain satisfactorily" loss of the Vehicle. *Farouki v. Emirates Bank Int'l Ltd.*, 14 F.3d 244 (4th Cir.1994).

"A satisfactory explanation has not been definitively defined, but the debtor probably must explain the losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct." Collier on Bankruptcy 15ed. 6–727 Collier on Bankruptcy–15th Edition Rev. P 727.08.

According to one opinion:

The word satisfactorily' ... may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has the mental attitude which finds contentment in saying he believes the explanation-he believes what the bankrupts say with reference to the disappearance or the shortage. He is satisfied. He no longer wonders. He is contented.

*In re Bodenstein*, 168 B.R. 23, 33 (Bankr. E.D.N.Y.1994) (citing *In re Shapiro & Ornish*, 37 F.2d 403, 406 (N.D.Tex.1929), *aff'd sub nom. Shapiro & Ornish v. J.J. Holliday*, 37 F.2d 407 (5th Cir.1930)).

 The court only needs to decide whether the explanation provided satisfactorily explains what happened to the asset, not whether what happened to it was proper. *In re Nye*, 64 B.R. 759, 762 (Bankr. E.D.N.C.1986) (citing W. Norton, 1 Norton Bankr.L. & Practice § 27.20 at 27–39

(1982)). In this case, for example, the evidence shows that the vehicle was stolen. It does not matter whether or not it was wise to park it in a place where other auto thefts had occurred.

██ As explained supra, Debtor provided credible and corroborated evidence explaining what happened to the Vehicle. The Vehicle was towed from 312 N. Hamlin, Chicago, Illinois, and never seen by Debtor again. Debtor originally and reasonably believed that Nuvell was the party responsible for towing the Vehicle, though later learned that was not the case. Her explanation at trial through evidence as to what happened to the Vehicle is found and held to be satisfactory.

Nuvell argues that Debtor's discharge should be denied under § 727(a)(5) because she failed to corroborate her evidence with documentation. Nuvell cites *In re Hermanson* for the proposition that Debtor's explanation for the loss of assets must be supported by some documentation, and that the documentation must sufficiently eliminate the need for the court to speculates as to what happened. *In re Hermanson*, 273 B.R. 538 (Bankr.N.D.Ill. 2002). *Hermanson* is easily distinguished from this case.

In *Hermanson*, debtor failed to explain satisfactorily what happened to his equity interests in some fifteen entities, to his valuable personal property, or to the proceeds of four loans totaling more than $1.3 million. Clearly, debtor's sophisticated transactions in *In re Hermanson* warranted the production of corroborating documentation. Indeed, there are many situations in which documentation may be required in order to defend a § 727 action. However, this is not such a case.

Creditor also cites the opinion *In re Hudgens* for support. 149 Fed.Appx. 480 (7th Cir.2005), arguing that Debtor's explanation as to loss of an asset requires

some written corroboration. However, as noted in *Hudgens*, "Like the bankruptcy court, we agree that documentary evidence would have been preferable. There is no bright line rule in our circuit, however, that a debtor must present documentary evidence in order for an explanation of asset loss to be satisfactory." *Id.* at 488. It may be concluded from precedent that documentary evidence may be preferred and in some cases quite necessary, but there is no bright line rule that always requires written corroboration.

██ In this case, written documentation explaining the events does not exist except for the Debtor's police report. "A debtor's explanation for the loss of assets can be satisfactory even without records corroborating the loss." *In re Tauber*, 349 B.R. 540, 564 (Bankr.N.D.Ind.2006) (citing *Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 840 (Bankr.N.D.Ohio 2004)). The language of § 727(a)(5) does not provide that written corroboration is required. *See Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 840 (Bankr.N.D.Ohio 2004). "[T]he Code provision does not dictate denial of discharge for failure to produce corroborating papers where the Debtor's testimonial assertions bear sufficient credibility." *In re Craig*, 140 B.R. 454, 459 (Bankr.N.D.Ohio 1992).

Therefore, despite the absence of any other written documentation corroborating Debtor's testimony other than the police report, the Debtor has satisfactorily explained the loss of the Vehicle. There was nothing inherently unbelievable or incredible in her explanation. Debtor made substantial attempts to locate the Vehicle but was not successful. This Court finds the Debtor's testimony was credible, reasonable and a good faith effort to make the explanations required by 11 U.S.C. § 727(a)(5). It was corroborated by her

niece's testimony and not materially contradicted by Nuvell's evidence, though there were some differences in recounting of conversations that can be understood as the presence of tension and confusion that often accompanies conversations. Accordingly, Debtor has met her burden and her discharge will therefore not be denied under § 727(a)(5) of the Bankruptcy Code.

## CONCLUSION

For the above reasons stated, judgment will separately enter in favor of Defendant/Debtor Mary Ross and against Nuvell, and this Adversary Proceeding will be dismissed with prejudice.